UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-80447-CV-MARRA/MATTHEWMAN

NELIDA KEHLE, as Guardian of
ANTHONY KEHLE, III,

      Plaintiff,

vs.

USAA CASUALTY INSURANCE
COMPANY,

      Defendant.

_____/



FILED by ___ D.C.

DEC 2 8 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

**ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER [DE 25]**

**THIS CAUSE** is before the Court upon Plaintiff, Nelida Kehle's, as Guardian of Anthony Kehle, III ("Plaintiff") Motion for Protective Order. [DE 25]. These matters were referred to the undersigned by United States District Judge Kenneth A. Marra upon an Order referring all discovery to the undersigned for final disposition. *See* DE 13. Defendant, USAA Casualty Insurance Company ("Defendant") filed a Response to the Motion [DE 28] and Plaintiff filed a Reply [DE 29]. After the Reply was filed, Defendant filed a Notice of Supplemental Authority [DE 31]. The Court held a hearing on the Motion on November 7, 2017. Subsequent to the hearing, Plaintiff filed a Notice of Supplemental Authority. [DE 37]. The matter is now ripe for review.

I.     **Introductory Statement as to Issue of First Impression**

This novel discovery dispute arises from a coverage action in which Plaintiff Kehle seeks to enforce a Settlement Agreement against Defendant USAA in the amount of $8,818,804. This dispute requires the Court to resolve an issue of first impression, that is, what discovery, if any,

1

Defendant USAA is permitted to undertake into the reasonableness and good faith of the underlying Settlement Agreement where that agreement is a hybrid *Coblentz* Agreement/Arbitration Award.

Plaintiff Kehle argues that even though the Settlement Agreement she seeks to enforce against Defendant USAA is a *Coblentz*-style agreement as to liability, that agreement contemplated and utilized binding arbitration before a single arbitrator to determine damages. Plaintiff argues that this addition of binding arbitration on damages to a *Coblentz*-style agreement on liability completely alters the discovery landscape. According to Plaintiff, even though Florida law permits a defendant such as USAA to conduct discovery into the good faith and reasonableness of a typical *Coblentz* agreement, the unique type of agreement at issue in this case precludes Defendant USAA from conducting discovery into the good faith or reasonableness of the agreement, as the use of an arbitrator to determine damages renders issues of good faith or reasonableness irrelevant, and because of the operation of Florida's arbitral immunity statute, Fla. Stat. § 682.051(4).

Defendant USAA argues that Plaintiff is, in fact, proceeding under a *Coblentz* agreement as she seeks to hold USAA responsible for damages in excess of the policy limits pursuant to the Settlement Agreement. Therefore, USAA submits that it is entitled to broad discovery into the reasonableness of the agreement, whether it was made in good or bad faith, or whether it was a sham. Defendant USAA argues that Plaintiff Kehle and USAA's insured, Mr. Gerald A. Henderson, entered into a *Coblentz* agreement whereby Henderson consented to liability and effectively "lied down," the parties agreed to submit the matter of damages to a single arbitrator, the parties agreed that the amount of damages found by the arbitrator would be reduced to a final judgment against Henderson, and, that the judgment against Henderson would not be recorded or

enforced against Henderson and Henderson would not be personally liable so long as he complied with the terms of the Settlement Agreement. USAA argues that the mere addition to a typical *Coblentz* agreement of a provision requiring the use of a "handpicked" arbitrator to determine damages does not preclude it from engaging in the broad discovery it seeks.

Although the undersigned prefers to be brief when dealing with discovery disputes, the novel and first impression nature of this specific dispute requires the Court to consider and analyze *Coblentz* agreements, appropriate discovery in relation to *Coblentz* agreements, the nature and scope of arbitral immunity, and ultimately here, the appropriate scope of discovery by an insurer-defendant into a hybrid *Coblentz* agreement/Arbitration award. Thus, in this Order, brevity must yield to a thorough, albeit lengthy, analysis of the issues relevant to this dispute.

## II.   Background

This case arises from a 2013 boating accident which resulted in severe bodily injury to Anthony G. Kehle, III. The driver or operator of the boat during the accident was Gerald A. Henderson ("the insured" or "Henderson") who was insured by USAA. In February of 2014, Nelida Kehle, as Guardian of Mr. Kehle, enlisted an attorney to contact USAA in order to settle his client's claims against Henderson. USAA claimed that the accident in which Mr. Kehle was injured was not covered by the policy, and denied the claim. [DE 1-2, pg. 7].

On March 20, 2014, Mrs. Kehle, as Guardian of Mr. Kehle, filed a lawsuit against Gerald Henderson, the driver of the boat; Nuncio Investing Limited, the owner of the boat; and Courtney J. Munson, the president and sole officer, director, and shareholder of Nuncio Investing Limited since its inception, in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, seeking damages for bodily injuries Mr. Kehle suffered in the accident. [DE 1-2, pg. 8, 96-97]. According to Plaintiff, in 2016, Henderson's counsel sent a letter to USAA

requesting USAA to withdraw its denial of coverage and provide a defense and indemnity to Henderson in the underlying lawsuit, pursuant to Henderson's insurance policy.[1] *Id.* USAA again denied coverage and declined to defend Henderson in the state lawsuit. *Id.* USAA claimed that the bodily injury suffered by Mr. Kehle did not arise out of or in connection with a "business engaged in by an insured," and therefore the incident would not be covered by Henderson's policy. [DE 1-2, pg. 9].

In October of 2016, Plaintiff entered into a settlement agreement with Henderson under which: (1) the parties agreed to submit the issue of the amount of damages sustained as a result of Henderson's negligence to binding arbitration before a neutral arbitrator, whose determination would be reduced to a consent Final Judgment in favor of Kehle and against Henderson in the lawsuit; (2) Plaintiff agreed to execute the Final Judgment against USAA in the event that the Court determined that USAA's denial of coverage was legally improper, rather than against Henderson; and (3) Henderson agreed to assign to Plaintiff all claims and causes of action which Henderson possessed against USAA, arising out of USAA's denial of coverage for, and its refusal to defend against, the underlying lawsuit. [DE 1-2, pgs. 10, 122-25].

On October 13, 2016, a binding arbitration on damages was conducted by the parties before James Munsey, Esq. of Matrix Mediation in West Palm Beach, Florida, who served as arbitrator in the proceeding. *Id.* The arbitrator did not consider the issue of liability, as Henderson had already consented that he was liable for the accident. Two weeks later, on October 27, 2016, the arbitrator determined that the total amount of damages sustained by Plaintiff was $8,818,804. *Id.* The state court then entered an order approving the settlement, and the court entered Final Judgment against Henderson in the same amount. [DE 1-2, pg. 11].

---

[1] Mr. Henderson's Insurance Policy with USAA included liability insurance, which contained a policy for Personal Liability with a limit of $100,000.00 and Medical Payment to Others with a limit of $1,000.00. [DE 1-2, pg. 16].

On March 21, 2017, Plaintiff filed suit against Defendant USAA in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida. [DE 1, pg. 1]. In this case, Plaintiff, asserting the rights of Henderson, alleged two counts of breach of contract, based on Defendant's denial of coverage and breach of its alleged duty to defend and to indemnify. [DE 1-2, pgs. 11, 13]. Defendant removed the case from state court to this Court on April 7, 2017. [DE 1].

### III.   Motion for Protective Order, Response and Reply

On August 28, 2017, USAA served its notice of intent to issue a subpoena *duces tecum* without deposition to the records custodian of Matrix Mediation, and on August 31, 2017, USAA served its notice of intent to issue four additional subpoenas *duces tecum* without deposition to Mr. Gerald Henderson, the driver or operator of the boat, Mr. Courtney Munson, the owner of the boat, and their respective attorneys. These five subpoenas have not yet been served upon those five non-parties to this action as Plaintiff has objected to the subpoenas. On September 26, 2017, Plaintiff filed a Motion for Protective Order from the subpoenas *duces tecum* issued by USAA and directed to:

(1)    The Corporate Records Custodian of Matrix Mediation, the entity who employed the arbitrator and facilitated the arbitration proceedings. The Matrix subpoena seeks "all materials and/or documents reviewed and/or received which were submitted to the arbitrator by any counsel with regard to the arbitration which took place on October 13, 2016, in the matter of *Nelida Kehle, as Guardian of Anthony G. Kehle, III v. Nuncio Investing Limited, Courtney J. Munson and Gerald A. Henderson,* filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, Case No. 502014CA003422XXXXMB, including, but not limited to: Information related

to Anthony Kehle, including medical records, medical reports, medical bills, assisted living facility information, mortality tables, business records; and all additional information provided for arbitrator's review, including but not limited to: jury verdict reports, deposition transcripts, transcripts of the arbitration proceedings (including transcripts of witness testimony during the arbitration), expert reports and invoices, any and all documents reviewed or received tending to support or negate the Defendant's negligence – including Mr. Henderson; any and all documents reviewed or received relating to damages, including documents relied upon to form the arbitration award and any notes of the arbitrator." [DE 35-2, pg. 2].

(2)     The records custodian of Michael Knecht, Esq., Henderson's attorney in the underlying lawsuit. The Knecht subpoena seeks "Your entire file in the matter of *Nelida Kehle, as Guardian of Anthony G. Kehle, III v. Nuncio Investing, Limited, Courtney J. Munson and Gerald A. Henderson,* filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, Case No. 502014CA003422XXXXMB, including but not limited to:

    i.   All correspondence and or/attorney notes.

    ii.   All documents received, documents produced, and any discovery responses of any party.

    iii.   All transcripts of any witness.

    iv.   Transcript(s) of the arbitration proceedings.

    v.   All medical records, medical reports, medical bills, assisted living facility information, mortality tables, business records of Plaintiff, Anthony Kehle.

vi. All information provided for arbitrator's review, including but not limited to: jury verdict reports, deposition transcripts, transcripts of the arbitration proceedings (including transcripts of witness testimony during the arbitration), expert reports and invoices, any and all documents reviewed or received tending to support or negate the Defendant's negligence, including Mr. Henderson.

vii. All documents sent to the arbitrator relating to damages or negligence, including the documents relied upon by the arbitrator to form arbitration award and any notes of the arbitrator." [DE 25-2, pg. 7].

(3) The records custodian of Tomberg, Hanson, and Halper, LLC, Munson's attorney in the underlying lawsuit.[2] The Tomberg subpoena seeks: "Your entire file in the matter of *Nelida Kehle, as Guardian of Anthony G. Kehle, III v. Nuncio Investing, Limited, Courtney J. Munson and Gerald A. Henderson,* filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, Case No. 502014CA003422XXXXMB, including but not limited to:

i. All correspondence and or/attorney notes.

ii. All documents received, documents produced, and any discovery responses of any party.

iii. All transcripts of any witness.

iv. Transcript(s) of the arbitration proceedings.

---

[2] Mr. Courtney Munson was the owner (through his company, Nuncio Investing, Limited) of the boat on which Mr. Kehle was injured.

v. All medical records, medical reports, medical bills, assisted living facility information, mortality tables, business records of Plaintiff, Anthony Kehle.

vi. All information provided for arbitrator's review, including but not limited to: jury verdict reports, deposition transcripts, transcripts of the arbitration proceedings (including transcripts of witness testimony during the arbitration), expert reports and invoices, any and all documents reviewed or received tending to support or negate the Defendant's negligence, including Mr. Henderson.

vii. All documents sent to the arbitrator relating to damages or negligence, including the documents relied upon by the arbitrator to form arbitration award and any notes of the arbitrator." [DE 25-2, pg. 11].

(4) Courtney Munson, the owner of the boat on which Mr. Kehle was injured. The Munson subpoena seeks "any and all documents and/or materials relating to the civil action titled *Nelida Kehle, as Guardian of Anthony G. Kehle, III v. Nuncio Investing, Limited, Courtney J. Munson and Gerald A. Henderson,* filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, Case No. 502014CA003422XXXXMB, including but not limited to: any communications with your counsel regarding assignment of rights to Plaintiff (Kehle), settlement negotiations, all information and/or documentation provided to the arbitrator (including but not limited to correspondence, records, email communications, and any other information provided), correspondence received and/or sent to your counsel

regarding the underlying civil litigation and any other documents and/or communications regarding the underlying civil action." [DE 25-2, pg. 15].

(5)     Gerald A. Henderson, the USAA insured and driver of the boat. The Henderson subpoena seeks "any and all documents and/or materials relating to the civil action titled *Nelida Kehle, as Guardian of Anthony G. Kehle, III v. Nuncio Investing, Limited, Courtney J. Munson and Gerald A. Henderson,* filed in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, Case No. 502014CA003422XXXXMB, including but not limited to: any communications with your counsel regarding assignment of rights to Plaintiff (Kehle), settlement negotiations, all information and/or documentation provided to the arbitrator (including but not limited to correspondence, records, email communications, and any other information provided), correspondence received and/or sent to your counsel regarding the underlying civil litigation and any other documents and/or communications regarding the underlying civil action." [DE 25-2, pg. 19].

## A. Plaintiff's Position as Stated in Her Motion

As set forth in her Motion [DE 25], Plaintiff argues that any information requested in the subpoenas which relate to the "reasonableness" and "good faith requirements" of a consent judgment or *Coblentz* agreement is not relevant in the instant case because the issue and amount of damages was determined by a neutral arbitrator rather than a consent judgment negotiated by the two parties. [DE 25, pg. 3]. Plaintiff argues that any documents pertaining to arbitration proceedings are protected from discovery under both Florida Statutes and Florida case law. [DE 25, pgs. 4-5]. Plaintiff argues that all five subpoenas should be quashed and a protective order should be entered preventing the subpoenas from being served upon the non-parties.

## B. **Defendant's Position as Stated in Its Response**

In its Response [DE 28], Defendant argues that regardless of the arbitration award, Plaintiff is still proceeding under a *Coblentz* agreement, because the parties agreed to liability. [DE 28, pg. 3]. Thus, the settlement agreement and arbitration can and should be reviewed. [DE 28, pg. 3]. Defendant submits that, pursuant to *Coblentz,* Defendant has the burden to demonstrate if an underlying settlement agreement was reasonable and in good faith, and therefore Defendant asserts that the subpoenas are relevant in order to obtain the discovery necessary to meet this burden. [DE 28, pgs. 3-4]. Because the documents relied upon in the arbitration formed the basis of the agreement on liability, the same documents relied upon in the arbitration directly relate to the reasonableness of both the agreement and the damages award. [DE 28, pg. 4].

Defendant further alleges that the underlying settlement agreement was made in bad faith, and thus discovery is necessary in order to prove that Henderson and his counsel "lied down" and acted in bad faith in negotiating with Plaintiff. *Id.* Defendant cites to the brief, day-long arbitration as well as the lack of a court reporter in the proceedings to suggest that there is a possibility of collusion between Plaintiff and Henderson. *Id.* Defendant states that the discovery sought by the subpoenas is necessary in order to determine the veracity of the arbitration and settlement proceedings. *Id.*

Further, Defendant disputes Plaintiff's claim that the arbitration documents are privileged under Florida law. [DE 28, pg. 5]. First, Plaintiff cannot assert any privilege on behalf of Henderson, Munson and their lawyers because it is not her privilege to assert. *Id.* Second, because USAA is not seeking documents related to the arbitrator's qualifications, mental processes, or deliberations, but rather the documents he relied on in making his determination, Defendant argues that the statutory privilege does not apply. *Id.* Defendant claims that the

documents underlying the arbitration award are essential to determine whether the award was reasonable and made in good faith. *Id.* Defendant filed a Notice of Supplemental Authority [DE 31] citing to several cases which support the proposition that an arbitrator can be deposed in specific circumstances.

### C. Plaintiff's Position as Stated in Her Reply

Plaintiff then filed a Reply [DE 29], in which she reiterates her argument that the agreement in the instant case differs from a *Coblentz* agreement because the parties themselves did not set the amount of the settlement in this case. [DE 29, pg. 2].The parties instead agreed to be bound by an arbitration award entered by a neutral third party. *Id.* Plaintiff also argues that the arbitration decision [DE 1-2, ps. 131-133] accurately sums up the evidence presented at the arbitration proceedings and makes specific findings of fact based on that evidence. Plaintiff claims that this summation allows Defendant to ascertain whether bad faith negotiations took place without obtaining discovery from the arbitrator. [DE 29, pg. 4]. Plaintiff relies on Fla. Stat. §682.051(4) to support her claim that Florida law immunizes an arbitrator from being required to produce records related to an arbitration proceeding. [DE 29, pg. 5].

### IV.    Discovery Hearing

Both parties appeared for the November 7, 2017 hearing and presented argument. During the hearing, Plaintiff argued that USAA could no longer attack the issue of liability because it waived the issue when it refused to defend or indemnify the lawsuit. Plaintiff also sought to differentiate between a typical consent agreement in a *Coblentz* case and the arbitration award at issue here. Plaintiff's counsel argued that because an arbitration award is binding, it is more akin to a jury determination than to a consent agreement. As such, the award should be immune to collateral attack or discovery. Plaintiff's counsel claimed that Florida case law and statutory

provisions make it clear that both the state courts and the state legislature intended to make arbitration proceedings confidential and immune from discovery. Plaintiff's position is that Defendant should not be able to obtain any of the documents sought in its five subpoenas *duces tecum.*

Defendant dismissed Plaintiff's argument and alleged that in every case cited by Plaintiff, the defendant was entitled to broad fact discovery. He argued that the test for whether the discovery should be permitted is reasonableness, and it is reasonable under the circumstances to further investigate the arbitration process. Defendant cited to several aspects of the arbitration, including the absence of a court reporter, the brevity of the proceedings, and the lack of cross-examination of Mr. Henderson, to establish the possibility of a bad faith proceeding. It argued that broad discovery of the arbitration process is the only way to ensure the arbitration award was not the result of collusion. According to Defendant, Florida case law establishes that an arbitration award should be subject to the same fact discovery as a consent judgment would be in a typical *Coblentz* agreement. A party is entitled to challenge the reasonableness and the good faith of the settlement agreement and arbitration award, and therefore documents pertaining to arbitration are relevant and within the scope of discovery.

After the hearing, Plaintiff filed a Notice of Supplemental Authority [DE 37] in which she cited to the transcript of proceedings in the Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida, where a circuit court judge granted plaintiff's motion for protective order and denied discovery requests seeking documents pertaining to the arbitration proceeding in the underlying case. *See Lord & Co., PLC v. Certain Underwriters at Lloyds of London*, Case No. 2012-CA-017682, 13th Judicial Circuit, Hillsborough County, Florida

(Transcript of Proceedings dated November 7, 2017 before Honorable Emmett Lamar Battles, Circuit Judge).

## V.    Discussion and Analysis

Federal Rule of Civil Procedure 26(c)(1) provides that a party or any person may move for a protective order, and the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." The party seeking the protective order has the burden to provide the Court with "good cause" for the protection sought. Fed. R. Civ. P. 26(c). "Good cause" has been defined as a "sound basis or legitimate need to take judicial action." *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1277 (S.D. Fla. 2008) (citing *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1985). The party requesting a protective order must make a specific demonstration of facts in support of the request. *Id.* A court must then balance the competing factors involved in determining whether good cause has been shown. *Id.* (citing *Farnsworth v. Procter & Gamble, Co.,* 758 F. 2d 1545, 1547 (11th Cir. 1985). Here, Plaintiff claims that there is good cause for a protective order because the information sought in the five subpoenas *duces tecum* is not relevant to the matters before the Court, and because the information is privileged under both Florida Statutes and Florida case law protecting arbitration awards.

Rule 26(b)(1) defines the scope of discovery as "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering the importance of the issues at stake, the parties' relative access to relevant information, the parties' resources, the importance of the discovery, and whether the burden of the discovery outweighs the likely benefit. It is well established that the courts must employ a liberal standard in keeping with the purpose of the discovery rules. *Wrangen,* 593 F.Supp 2d at 1278. However,

13

Rule 26(b)(1) evaluates discovery through increased reliance on the common sense concept of proportionality. *In Re Takata Airbag Prod. Liab. Litig.,* No. 14-24009-CV, 2016 WL 1460143, at *2 (S.D. Fla. 2016); *Reuter v. Physicians Cas. Risk Retention Group,* No. 16-80581-CV, 2017 WL 395242, (S.D. Fla. 2017).

### a. Applicable Law Pertaining to *Coblentz* Agreements

In order to determine whether the documents sought by Defendant USAA pursuant to its five subpoenas *duces tecum* are relevant and proportional to this case pursuant to Fed. R. Civ. P. 26(b)(1), the Court must look to Florida case law regarding settlement agreements similar to the agreement at issue in this case. These agreements, often referred to as *Coblentz* agreements, received their name from a Fifth Circuit case of the same name, *Coblentz v. American Surety Co. of New York,* 416 F. 2d 1059, 1063 (5th Cir. 1969).[3] In *Coblentz,* the court held that an insurer who had "refused to handle" its insured's defense, leaving its insured to "his own resources," was bound by the terms of a negotiated final consent judgment entered against the insured. *Id. Coblentz* agreements are valid and binding in Florida. *United States Fire Ins. Co. v. Hayden Bonded Storage Co.,* 930 So. 2d 686, 690-91 (Fla. 4th D.C.A. 2006).

Thus, in a *Coblentz* agreement, an insurer will be bound to the settlement agreement/consent judgment negotiated between an insured and a claimant where 1) damages are covered by the policy; 2) the insurer wrongfully refused to defend; and 3) the settlement is reasonable and made in good faith. See *Wrangen,* 593 F.Supp 2d at 1278 (citing *Chomat v. Northern Ins. Co. of New York,* 919 So.2d 535, 538 (Fla. 3rd D.C.A. 2006); *see United States Fire Ins. Co.,* 930 So.2d at 690-91; *Gallagher v. Dupont,* 918 So.2d 342, 349 (Fla. 5th D.C.A. 2005)).

---

[3] Pursuant to *Bonner v. Prichard,* 661 F. 2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

Where an insurer wrongfully refuses to defend its insured, the insured's liability has been established by the settlement and the insurer may not later relitigate this issue. *Ahern v. Odyssey Re (London) Ltd.*, 788 So. 2d 369, 371, (Fla. Dist. Ct. App. 2001); *see also Id.* at 373 (upon refusal to provide a defense, "Odyssey [the insurer] lost its chance to litigate the factual issues surrounding duty, breach, and proximate causation that were pivotal to the ultimate resolution of Ahern's claims."). An insurer cannot raise any defense to a plaintiff's claim in the pending case that should have been raised in the underlying action. *Wrangen,* 593 F.Supp 2d at 1278 (citing *Gallagher*, 918 So. 2d at 347)).

However, where an injured party wishes to recover under a *Coblentz* agreement, the claimant must still demonstrate a prima facie showing that the agreement is reasonable and made in good faith, "even though the ultimate burden of proof will rest with the carrier." *Id.* at 1279 (citing *Chomat,* 919 So. 2d at 538 (quoting *Stell v. Florida Physicians' Ins. Reciprocal,* 448 So. 2d 589, 592 (Fla. 2nd D.C.A. 1984))). These requirements ensure that the settlement of liability and amount of damages are appropriate in relation to the strength of a plaintiff's claim, especially where an insured may never be obligated to pay and has little to lose if she stipulates to a large settlement figure with the plaintiff. *Sidman v. Travelers Casualty and Surety,* 841 F. 3d 1197, 1202 (11th Cir. 2016) (citing *Stell,* 448 So. 2d at 592).

In Florida, the test as to whether the settlement agreement is reasonable is "what a reasonably prudent person in the position of the defendant [the insurer] would have settled for on the merits of plaintiff's claim." *Home Ins. Co. v. Advance Machine Co.*, 443 So.2d 165, 168 (Fla. 1st D.C.A. 1983). In determining whether a settlement is reasonable, a Florida court considers not only such objective factors as the extent of plaintiff's injuries, but also "certain subjective factors ... including the degree of certainty of the tortfeasor's subjection to liability, the risks of

going to trial and the chances that the jury verdict might exceed the settlement offer." *Home Ins. Co.,* 443 So.2d at 168 (citing *Miller v. Shugart,* 316 N.W.2d 729, 735 (Minn. 1982)). The determination of whether a settlement is reasonable is made by a "reasonable person standard," and is usually established by expert testimony about such matters like the extent of defendant's liability, the reasonableness of the damages amount in comparison with awards in similar cases, and the expense which would have been required for defendant to settle the suit. *Chomat,* 919 So. 2d at 538. A court should look to the degree of probability of the insured's success and the size of the possible recovery in order to determine the reasonableness of the settlement agreement. *Wrangen,* 593 F.Supp 2d at 1279 (citing *Independent Fire Ins. Co. v. Paulekas,* 633 So. 2d 1111, 1114 (Fla. 3rd D.C.A. 1994)).

In addition to making a prima facie showing of reasonableness, the plaintiff must also make a prima facie showing of good faith. *Chomat,* 919 So. 2d at 538. In defending against this prima facie case of good faith, a defendant can allege bad faith, which includes false claims or "collusion" in which the plaintiff agrees to share the recovery with the insured. Bad faith "involve[s] the underlying facts of the case." *Id.*

In *Wrangen,* plaintiff Wrangen sued his employer, Omicron Supplies, Inc., for injuries he suffered inhaling glue fumes while at work. Omicron was insured by defendant Pennsylvania Lumbermens Mutual Insurance at the time of the injury, but Lumbermens denied the claim. Wrangen sued Omicron in state court and ultimately settled the state suit for $4.5 million. Pursuant to a *Coblentz* agreement, Omicron assigned its claims and causes of actions against Lumbermens to Wrangen, and Wrangen sued Lumbermens. Then United States Magistrate Judge Robin Rosenbaum held that Lumbermens was permitted to inquire into the actual amount of the settlement as well as issues of liability and causation during discovery in order to determine the

reasonableness of the settlement agreement between Wrangen and Omicron. *Wrangen,* 593 F.Supp 2d at 1279. Magistrate Judge Rosenbaum, who is now a judge on the Eleventh Circuit Court of Appeals, reasoned that it would be difficult for a defendant to find evidence regarding the issues underlying reasonableness without "at least inquiring into the underlying facts concerning causation and liability." *Id.* at 1280. Judge Rosenbaum found that information regarding causation and liability had a direct bearing on the issue of reasonableness of the settlement agreement, which was an essential issue before the court. *Id.* Thus, the information was relevant and fell within the realm of discoverable information. *Id.* Additionally, the Court held that information regarding liability and causation also bore on the essential element of good faith, and therefore served as another basis for relevancy of the information under the discovery rules. *Id.*

### b. The Propriety of Discovery into the Settlement Agreement in this Case

Plaintiff argues that even though discovery was permitted in *Wrangen,* the discovery sought by Defendant USAA in this case should not be allowed. Plaintiff argues that the instant case differs from *Wrangen* because the parties in *Wrangen* determined the amount of damages in the underlying lawsuit through negotiation, and not through the presentation of evidence to a neutral arbitrator. Plaintiff argues that because the award of damages in this case was determined by a neutral arbitrator, all the documents sought by Defendant USAA in its five subpoenas are irrelevant and outside the scope of discovery because of the "finality and enforceable nature of an arbitration award." *Schnurmacher Holding, Inc. v. Noriega,* 542 So. 2d 1327 (Fla. 1989).

The Court has carefully considered Plaintiff's argument and has reviewed the Settlement Agreement at issue.[4] However, Plaintiff's argument, even if accepted by the Court, would only pertain to the issue of damages. The arbitrator did not determine whether Henderson was liable

---

[4] The Settlement Agreement is found at DE 10-8.

for the accident. The arbitrator also did not dismiss Munson from the action. The arbitrator did not determine that Henderson would have no personal liability for the ultimate judgment entered against him or that it would not be recorded. The arbitrator merely ruled on the amount of damages.

Therefore it would seem that at a minimum, Defendant USAA is entitled to discovery into the liability agreement which is similar, at least in part, to a *Coblentz* agreement. This is so because Henderson consented to liability when he entered into the agreement with Plaintiff. In that agreement, Henderson also consented to submit to binding arbitration before a single arbitrator to determine the amount of damages, but only on the condition that Plaintiff "agreed to execute the Final Judgment against USAA in the event that the Court determined that USAA's denial of coverage was legally improper, rather than against Henderson." [DE 1-2, pgs. 10, 122-25].

In the instant case, the agreement entered into by Plaintiff and Henderson does contain elements of a typical *Coblentz* agreement like the agreement at issue in *Wrangen.* But the agreement in the instant case has an added wrinkle – the use of a single arbitrator to determine damages after the parties entered into a *Coblentz*/liability-type agreement. The primary factor which differentiates the instant agreement from a typical *Coblentz* agreement is the parties' decision to have the issue of damages decided by one arbitrator at a binding arbitration proceeding. Although this distinction is noteworthy, the Court finds that this distinction does not necessarily immunize or insulate the underlying agreement from Defendant's request for discovery.

The key issue is whether the discovery sought is relevant and proportional under Rule 26(b)(1). Florida case law defines the inquiry into the "reasonableness" of a *Coblentz* agreement

as not limited to just the actual amount of the settlement, but to more broadly include the "extent of the defendant's liability." *Wrangen,* 593 F.Supp 2d at 1279 (citing *Chomat,* 919 So.2d at 538). Therefore, information and discovery pertaining to Henderson's liability or non-liability (and Munson's liability or non-liability) regarding the boating accident directly bears on the reasonableness and good faith of Henderson's agreement with Plaintiff. Like the insurer in *Wrangen,* USAA is entitled to discovery regarding those facts which give rise to Henderson's alleged liability for the accident. Thus, any and all information relating to the alleged liability of Mr. Henderson is relevant and proportional and is not immunized or insulated from discovery merely because the parties agreed to submit damages to an arbitrator. Additionally, prior to the arbitration, the parties agreed to dismiss Munson from the suit. USAA is entitled to inquire into the good faith and reasonableness of this agreement as well, and into the factors relating to Munson's liability or non-liability. Furthermore, USAA is also entitled to discovery related to the decision to attend binding mediation before a single arbitrator and the parties' selection of the arbitrator. The agreement to go to a single arbitrator was a decision included in the agreement where Henderson admitted liability. This decision, clearly not made by an arbitrator, is part and parcel of the settlement agreement between Plaintiff and Henderson, and USAA is entitled to inquire into the good faith and reasonableness of the decision to submit to arbitration before a single arbitrator, as well as the selection of the arbitrator.

Therefore, USAA is entitled to any discovery detailing Plaintiff and Henderson's decision to enter into arbitration and the selection of Matrix Mediation, LLC, and James Munsey, Esq. as their arbitrator. USAA is also entitled to discover into facts which underlie the liability of Henderson and Munson and into how the agreement at issue in this case was reached between Plaintiff, Henderson, and Munson. This is only fair, especially in a case where damages exceed

eight million dollars. The Court is not going to hamstring Defendant USAA from pursuing discovery into whether the settlement between Plaintiff and Henderson was reasonable, in good faith, or a sham. This very well may be an issue to be decided by a jury in this case and thus discovery is appropriate.[5] The parameters of Plaintiff and Henderson's settlement agreement, the facts underlying the settlement agreement, including the dismissal of Munson, the facts and circumstances underlying Henderson and Munson's alleged liability, the agreement to proceed to arbitration before a single arbitrator, and the selection of the arbitrator, are all relevant and proportional areas of discovery.

### c. Whether Defendant USAA is Entitled to Discovery into the Damage Award Entered at Arbitration

The Court must next determine whether Defendant is entitled to any discovery into the facts underlying the more than eight million dollar damages award entered by the arbitrator. The parties' decision to have the amount of damages determined by the arbitrator is not normally part of a typical *Coblentz* agreement. This is where the agreement in this case differs from that at issue in *Wrangen*. The agreement in this case appears to be something of a hybrid *Coblentz*-arbitration agreement. That is, the issue of the liability of Henderson, the assignment of rights by Henderson, and the agreement by Plaintiff to not attempt to collect the judgment from Henderson, are all part of a typical *Coblentz* agreement, but the submission of damages to an arbitrator is not. Neither the parties nor the Court have found a case in the discovery context directly on point to such a hybrid type of agreement. Therefore, the issue of whether USAA is entitled to all of the discovery it seeks pursuant to the five subpoenas, including the documents

---

[5] For example, in *Jimenez v. Gov't Employees Ins. Co.,* 651 F. App'x 850 (11th Cir. 2016), the jury was presented with two issues: 1) Whether defendant GEICO acted in bad faith, and 2) Whether the consent judgment was reasonable in amount and not tainted by bad faith, fraud, or collusion or without any effort to minimize liability. *Id.* at 852. The jury answered the first question "yes", and the second question, "no", and therefore final judgment was entered in favor of GEICO. *Id. Jimenez* exemplifies why Defendant USAA should be afforded broad discovery into the underlying settlement agreement so that it can fully defend itself and argue its case before the trier of fact.

submitted to the arbitrator to determine the amount of damages, appears to be an issue of first impression.

The crux of Plaintiff's argument for a protective order rests on the proposition that USAA should not be permitted to obtain any of the documents sought in its five subpoenas *duces tecum* because an arbitration award "is final and cannot be collaterally attacked by USAA," and therefore documents relating to the arbitration proceeding are irrelevant to this case. *See* DE 25, pgs. 3-4. Because the damages portion of the award was submitted to arbitration, Plaintiff argues that *Coblentz* type discovery is impermissible. Plaintiff argues that the award is final and cannot be collaterally attacked by USAA in this proceeding. [DE 25, pg. 5]. Although it is true that Defendant USAA is not seeking to set aside the arbitrator's award in this case, a review of Florida law on setting aside an arbitration award may be helpful to assist the Court in reaching a decision as to what discovery into the damages award entered at the arbitration, if any, is appropriate in this complicated discovery dispute.

Though rare, final arbitration awards are sometimes subject to scrutiny. Florida Rule of Civil Procedure 1.540(b)(3) provides that a court may relieve a party from a final judgment for the reason of "fraud, misrepresentation, or other misconduct of an adverse party." However, "review of arbitration proceedings is extremely limited." *Davenport v. Dimitrijevic*, 857 So. 2d 957, 961 (Fla. Dist. Ct. App. 2003). A court may not set aside an arbitration award except upon those grounds set forth in Florida Statute § 682.13(1). The statute states that a court "shall vacate" an arbitration award if the award was procured by corruption, fraud, or other undue means, or if there was evident partiality, corruption, or misconduct by the arbitrator.

Several courts have allowed limited discovery into an underlying arbitration if there is bias or misconduct alleged on the part of the arbitrator. In *Antietam Indus., Inc. v. Morgan*

*Keegan & Co*, No. 6:12-CV-1250-ORL-36TBS, 2012 WL 4513763, at *1 (M.D. Fla. Oct. 2, 2012), United States Magistrate Judge Thomas B. Smith allowed a defendant to subpoena all documents concerning the "contents of the arbitrator files...including but not limited to all arbitrator disclosures, arbitrator applications, resumes, background information, conflict information, [and] bias disclosures" of the arbitrator assigned to the underlying arbitration award at issue in the case. Judge Smith found that the requested information was relevant to Defendant's motion to vacate the arbitration award because the information "may tend to show that one of the arbitrators failed to disclose or misrepresented information which beared upon his neutrality" in the underlying arbitration. *Id.* at 2; *See also Admin. Dist. Council 1 of Ill. Of the Int'l Union of Bricklayers and Allied Craft–Workers, AFL–CIO v. Masonry Co., Inc*, No. 12 C 233, 2012 WL 1831454 (N.D. Ill. May 18, 2012) (recognizing the right of a party to depose an arbitrator in limited circumstances, so long as the examination does not question the correctness of the decision).

However, in *Razzano v. Sentinel Ins. Co.*, No. 2:12-cv-141-FTM-29DNF, 2012 WL 12916056, at *1 (M.D. Fla. Oct. 29, 2012) United States Magistrate Judge Douglas N. Frazier precluded an insurer from deposing the arbitrator who issued the award in the underlying dispute. The case arose when defendant Sentinel, an automobile insurance carrier, allegedly breached its contract with plaintiff Razzano, the insured, by failing to indemnify Razzano when he was involved in an automobile accident with the Walters. *Id.* The Walters sued Razzano in state court and the parties agreed to arbitration, where Razzano agreed to pursue Sentinel on behalf of himself and the Walters to recover the insurance proceeds allegedly due to Razzano under his Sentinel insurance policy. *Id.* The arbitrator, Ronald M. Friedman, Esq., entered an arbitration award confirming Razzano was liable for the accident and awarding damages to the

Walters. Sentinel served the arbitrator with a notice of deposition in order to discover if the arbitration was binding or non-binding, because it claimed that if the arbitration was non-binding, then Razzano' liability was established through a settlement agreement, and the settlement agreement must be reasonable and in good faith. *Id.* Judge Frazier found that this was not a "legally sufficient reason to depose" the arbitrator. *Id.* Sentinel failed to "allege one of the limited circumstances such as bias or impartiality which would make the deposition of the arbitrator appropriate." *Id.* Judge Frazier also noted that Sentinel had "other avenues available to it without having to depose an arbitrator to discover if the arbitration…was binding." *Id.* While it is clear that district courts have allowed narrow discovery into the arbitration process when there is an appropriate legal basis for undermining and vacating an arbitration award, a court will not allow a party to discover into the personal observations and thought processes of the arbitrator without sufficient justification. *See* Fla. Stat. §682.13; 9 U.S.C. §10(a).

**d. Arbitral Immunity---The Language and Legislative Intent of Fla. Stat §**
    **682.051**

Plaintiff argues that, in Florida, arbitration is immune from discovery and that Fla. Stat. § 682.051 requires that her Motion for Protective Order be granted.

Fla. Stat. § 682.051 provides that:

(1) An arbitrator or an arbitration organization acting in that capacity is immune from civil liability to the same extent as a judge of a court of this state acting in a judicial capacity.
(2) The immunity afforded under this section supplements any immunity under other law.
(3) The failure of an arbitrator to make a disclosure required by s. 682.041 does not cause any loss of immunity under this section.
(4) In a judicial, administrative, or similar proceeding, an arbitrator or representative of an arbitration organization is not competent to testify, and may not be required to produce records as to any statement, conduct, decision, or ruling occurring during the arbitration proceeding, to the same extent as a judge of a court of this state acting in a judicial capacity. This subsection does not apply:

      a. To the extent necessary to determine the claim of an arbitrator, arbitration organization, or representative of the arbitration organization against a party to the arbitration proceeding; or

      b. To a hearing on a motion to vacate an award under s. 682.13(1)(a) or (b) if the movant establishes prima facie that a ground for vacating the award exists.

(5) If a person commences a civil action against an arbitrator, arbitration organization, or representative of an arbitration organization arising from the services of the arbitrator, organization, or representative or if a person seeks to compel an arbitrator or a representative of an arbitration organization to testify or produce records in violation of subsection (4), and the court decides that the arbitrator, arbitration organization, or representative of an arbitration organization is immune from civil liability or that the arbitrator or representative of the organization is not competent to testify, the court shall award to the arbitrator, organization, or representative reasonable attorney fees and other reasonable expenses of litigation.

The statute mandates that an arbitrator and an arbitration organization may not be required to testify or produce certain specific records connected to an arbitration proceeding. Those specific records are identified in the statute as "any statement, conduct, decision, or ruling occurring during the arbitration proceeding, to the same extent as a judge of a court of this state acting in a judicial capacity," except to the extent necessary to determine the claim of an arbitrator against a party to the arbitration or to a hearing on a motion to vacate an award. Fla Stat. § 682.051(4). Prior to the enactment of this statute, Florida provided a form of arbitral immunity to arbitrators, as well as mediators and mediator trainees. *See* Fla. Stat. Ann. § 44.107. The Florida Legislature created § 682.051 in 2013 when it largely adopted the provisions of the 2000 revision of the Uniform Arbitration Act ("RUAA"), as approved by the National Conference of Commissioners on Uniform State Laws. Florida Staff Analysis, S.B. 530, 3/15/2013. Section 14 of the RUAA contains identical language to Fla. Stat § 682.051. The drafters' comment to this provision states that arbitral immunity arises from the "functional comparability of the role of arbitrators and judges." Unif. Arbitration Act (2000) § 14, cmt. 1. The comment elaborates:

    "In addition to the grant of immunity from a civil action, arbitrators are also generally accorded immunity from process when subpoenaed or summoned to testify in a judicial proceeding in a case arising from their service as arbitrator. *See, e.g. Andros Compania Maritima v. Marc Rich,* 579 F.2d 691 (2d Cir. 1978); *Gramling v. Food Mach. & Chem.*

*Corp.*, 151 F. Supp. 853 (W.D. S.C. 1957). This full immunity from any civil proceedings is what intended by the language in § 14(a)."

*Id.* The comment further states that § 14(a) (adopted by Florida law and enacted as § 682.051(1)) provides an arbitration organization with the same immunity as provided to an arbitrator. This immunity is appropriate because the duties performed by arbitration organizations in administering the arbitration process are the functional equivalent of the roles and responsibilities of judges administering the adjudication process in a court of law. *See, e.g., New England Cleaning Serv., Inc. v. American Arbitration Ass'n*, 199 F.3d 542 (1st Cir. 1999); *Honn v. National Ass'n of Sec. Dealers, Inc.*, 182 F.3d 1014 (8th Cir. 1999); *Hawkins v. National Ass'n of Sec. Dealers, Inc.*, 149 F.3d 330 (5th Cir. 1998); *Olson v. National Ass'n of Sec. Dealers, Inc.*, 85 F.3d 381 (8th Cir. 1996); *Aerojet-General Corp. v. American Arbitration Ass'n*, 478 F.2d 248 (9th Cir. 1973); *Cort v. American Arbitration Ass'n*, 795 F. Supp. 970 (N.D. Cal. 1992); *Boraks v. American Arbitration Ass'n*, 205 Mich.App. 149, 517 N.W.2d 771 (1994); *Candor v. American Arbitration Ass'n*, 97 Misc. 2d 267, 411 N.Y.S.2d 162 (Sup. Ct., Tioga Cty. 1978).

Fla. Stat. § 682.051(4) is based upon § 14(d) of the RUAA, and is the section at issue in this case. Both subsections state that an arbitrator, or a representative of an arbitration organization, are not competent to testify and may not be required to produce records as to "any statement, conduct, decision, or ruling occurring during the arbitration proceeding." The drafters of the RUAA's comment to this provision state that this section "is intended to protect an arbitrator or a representative of an arbitration organization from being required to testify or produce records from an arbitration proceeding, or related matter." The drafters added that if the law of a given State would require a judge to testify in a proceeding for strong public policy reasons, like involvement in a criminal matter, an arbitrator or representative would be also required to testify. Unif. Arbitration Act (2000) § 14, cmt. 5.

RUAA § 14(d) is based on the California Evidence Code § 703.5, which states that: "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement or conduct that could (a) give rise to civil or criminal contempt, (b) constitute a crime, (c) be the subject of investigation by the State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings under paragraph (1) or (6) of subdivision (a) of Section 170.1 of the Code of Civil Procedure." California courts have interpreted § 703.5 to bar *only* the arbitrator from testifying (whether personally or by declaration) at subsequent civil proceedings. It does not bar parties to the arbitration from testifying about the proceedings. *See Caro v. Smith*, 59 Cal. App. 4th 725, 734, 69 Cal. Rptr. 2d 306, 312 (1997); *Skulnick v. Roberts Express, Inc.* 2 Cal. App. 4th 884, 890 (1992) (holding that §703.5 excluded the settlement judge from testifying about conversations made during settlement conferences; but allowed attorney declarations.)

With the foregoing in mind, the Court will now address the five specific subpoenas *duces tecum* at issue.

### a. Subpoena *Duces Tecum* to Matrix Mediation, LLC

The proposed subpoena to the records custodian of Matrix Mediation, LLC, seeks the following:

> "Information related to Anthony Kehle, including medical records, medical reports, medical bills, assisted living facility information, mortality tables, business records; and all additional information provided for arbitrator's review, including but not limited to: jury verdict reports, deposition transcripts, transcripts of the arbitration proceedings (including transcripts of witness testimony during the arbitration), expert reports and invoices, any and all documents reviewed or received tending to support or negate the Defendant's negligence – including Mr. Henderson; any and all documents reviewed or

received relating to damages, including documents relied upon to form the arbitration award and any notes of the arbitrator."

The discovery requested in the proposed subpoena to Matrix can be split into two general categories: First, the evidence submitted to the arbitrator by Plaintiff, Henderson, Munson, and their counsel, including medical records, medical reports, medical bills, assisted living facility information, mortality tables, business records, expert reports and invoices, and documents relating to damages; and, second, documents specifically relied upon by the arbitrator to form the arbitration award, the notes of the arbitrator, and the evidence of the actual arbitration process itself, including transcripts of the arbitration proceedings.[6]

Pursuant to both the plain language of Fla. Stat. § 682.051(4) and the legislative intent, as well as the case law protecting the deliberations, decision-making, and thought processes of arbitrators, the Court finds it clear that Matrix Mediation, LLC shall not be required to produce discovery into the decision-making or deliberative processes of James Munsey, Esq., the arbitrator, or into the manner in which he arrived at his damages award. *See Prudential-Bache Sec., Inc. v. Shuman*, 483 So. 2d 888, 889 (Fla. Dist. Ct. App. 1986) (arbitration proceedings "are generally not to be examined by a trial court or an appellate court in determining how the arbitrators arrived at their award."); *Reichman v. Creative Real Estate Consultants, Inc.*, 476 F. Supp. 1276, 1286, 1979 U.S. Dist. LEXIS 9962, *31 (S.D.N.Y September 7, 1979) (denying the deposition of an arbitrator for the "forbidden purpose" of probing the arbitrator's decision-making process.") Specifically, the Court orders that Matrix shall not be required to produce documents which disclose the Arbitrator's statement, conduct, reasoning, legal research, or correspondence with his staff or research assistants. Nor shall Matrix have to identify and disclose the specific documents relied upon by the arbitrator in reaching his damages award.

---

[6] Defendant's subpoena to Matrix only seeks documents; it does not seek to obtain deposition testimony from the arbitrator.

Further, the subpoena, to the extent it seeks any notes of the arbitrator, is clearly improper in light of Fla. Stat. § 682.051(4) and shall not be permitted.[7]

However, neither the plain language of Fla. Stat. § 682.051(4), nor the legislative intent as explained by the National Conference of Commissioners on Uniform State Laws of the arbitral immunity statute § 682.051, clearly prohibit an arbitration organization from being subpoenaed to produce documents that were submitted to the arbitrator by the parties in the arbitration proceeding. The Court finds that all documents submitted to the arbitrator by the parties or their counsel can be obtained by Defendant USAA pursuant to its subpoena of Matrix. Fla. Stat. § 682.051(4) does not dictate a contrary result. In the Court's analysis, it is important to note that in this case the parties below entered into binding arbitration before a single arbitrator pursuant to a *Coblentz*-type agreement where an insured admitted liability and assigned his rights to all claims and causes of action he possessed against USAA, in exchange for Plaintiff's promise to execute the Final Judgment against USAA (and not the insured) in the event that the Court determined that USAA's denial of coverage was legally improper. Thus Henderson had nothing to lose by entering into the agreement and the arbitration process as any liability would ultimately be shifted to the insurer. The arbitration itself was conducted without a court reporter at the proceedings, and the proceedings only lasted one day. There was allegedly no cross examination of Mr. Henderson, the insured. The amount awarded ($8,818,804.00) greatly exceeded the policy limits. The Court can therefore understand why Defendant USAA may be somewhat skeptical of the settlement agreement and arbitration process and wants to engage in discovery regarding both.

---

[7] The Court notes that the arbitration award issued by the arbitrator has already been produced to Defendant USAA by Plaintiff and therefore a subpoena to Matrix for that document is unnecessary and that issue is moot. Further, the parties to this lawsuit agree that no transcript of the arbitration proceeding exists and no court reporter was present, thereby rendering that portion of the subpoena which seeks a transcript of the arbitration proceeding and Plaintiff's Motion for Protective Order directed to that issue moot as well.

Given the context of the arbitration proceeding, the nature of the multi-million dollar judgment, and the limited language of Fla. Stat. § 682.051(4), which solely protects any "statement, conduct, decision, or ruling occurring during the arbitration proceeding," the Court finds that the documents submitted by the parties to the arbitrator must be produced as they are relevant, proportional, and within the scope of Rule 26. The Court finds that it is reasonable to permit Defendant USAA to conduct limited discovery regarding the arbitration proceeding. The Court finds that the documents submitted by the parties or their counsel to the arbitrator lay outside the protection of Fla. Stat. § 682.051(4), because 1) public policy allows for the production of documents in order to assure good faith and fair dealing in *Coblentz* agreements; 2) the agreement at issue is a hybrid Coblentz-arbitration agreement; and 3) the limited documents ordered to be produced do not undermine the statute's purpose of protecting the arbitrator through arbitral immunity.

Because Defendant is alleging bad faith, it should be entitled to those documents, materials, or evidence presented or submitted to the arbitrator by the parties relating to the accident, injury, or damages of Mr. Kehle. This should generally include any documents, materials, correspondence, or statements made or presented to the arbitrator by any of the parties relating to liability or damages. This also includes but is not limited to medical records; medical reports; assisted living facility information; mortality tables; business records; correspondence, research, expert reports and invoices; and other documents submitted by the parties.[8]

Florida law does not preclude this production. It is noteworthy that Fla. Stat. § 682.051(4) appears to provide an arbitrator with arbitral immunity "to the same extent as a judge of a court

---

[8] In regards to the transcripts of the arbitration requested by USAA, the parties have informed the Court at the hearing that there is no transcript of the arbitration proceeding and no court reporter was present. Thus, that portion of the subpoena to Matrix, as well as that portion of the motion to quash the subpoena as it relates to transcripts of the arbitration, are moot.

of this state acting in a judicial capacity." *Id.* If the analogy of an arbitrator to a judge is continued, and a defendant were seeking to discover documents or evidence submitted to a judge during a bench trial, a defendant would surely be entitled to discovery of the exhibits and documents presented to the Court. Conversely, a defendant would not be entitled to the judge's notes, the judge's correspondence with her law clerks, or documents regarding the judge's decision-making or deliberative process. Thus, allowing USAA discovery into the evidence, documents, correspondence, and materials submitted to the arbitrator by the parties or their counsel does not undermine Fla. Stat. § 682.051's purpose of immunizing arbitrators and arbitration organizations to the same extent as judges.[9]

The Court reiterates and finds that Defendant USAA may serve a subpoena upon Matrix Mediation for documents, materials, correspondence, or evidence submitted by the parties to the arbitrator. This includes but is not limited to medical records; medical reports; assisted living facility information; mortality tables; business records; expert reports and invoices; affidavits; declarations; expert reports; and any and all documents, papers, correspondences submitted by or on behalf of the parties to the arbitrator. Defendant shall not seek, and Matrix shall not be required to produce, any documents which seek to delve into the arbitrator's decision making or deliberative processes, notes, or any other related materials.

---

[9] Plaintiff's citation to two transcripts of hearings before two different judges does not dictate a contrary result. At DE 37, Plaintiff submitted a transcript of a hearing before a Hillsborough County Circuit Court Judge where that Judge sustained an objection to a subpoena to an arbitrator and granted the party's motion for protective order. [DE 37, pg. 11]. However, the oral order reflected in the transcript does not provide a detailed analysis of the relevant issue in this case. Further, Plaintiff cites to a federal case where U.S. Magistrate Judge Alicia Otazo-Reyes orally ruled on a discovery request regarding an arbitration award. [DE 25-4]. Judge Otazo-Reyes denied the discovery request but maintained the possibility that discovery could be re-opened depending upon the Court's ruling on a motion for judgment on the pleadings. No written order was entered by Judge Otazo-Reyes as to that discovery dispute, and the facts in this case are somewhat dissimilar to that case. After carefully reviewing both transcripts, the Court finds that they are of little assistance in determining the unique issues in this case.

## b. **The Four Subpoenas _Duces Tecum_ to Henderson, Munson, and their Respective Attorneys**

Defendant has served four other notices of intent to issue subpoenas for documents upon Henderson, Munson, and the records custodian of their respective attorneys' offices. The proposed subpoenas _duces tecum_ to Tomberg, Hanson & Halper, LLC, and Michael C. Knecht, P.A. seek:

> "All documents produced, and any discovery responses of any party; transcripts of any witness; transcript(s) of the arbitration proceedings; all medical records, medical reports, medical bills, assisted living facility information, mortality tables, business records of Plaintiff, Anthony Kehle; all information provided for arbitrator's review, including but not limited to: jury verdict reports, deposition transcripts, transcripts of the arbitration proceedings (including transcripts of witness testimony during the arbitration), expert reports and invoices, any and all documents reviewed or received tending to support or negate the Defendant's negligence, including Mr. Henderson; and all documents sent to the arbitrator relating to damages or negligence, including the documents relied upon by the arbitrator to form arbitration award and any notes of the arbitrator."

[DE 25-2, pgs. 7, 11]. Defendant's proposed subpoenas _duces tecum_ for Henderson and Munson seek:

> "Documents and materials relating to the underlying state case, including but not limited to: any communications between the parties and their counsel regarding assignment of rights to Kehle, settlement negotiations, all information and/or documentation provided to the arbitrator (including but not limited to correspondence, records, email communications, and any other information provided), correspondence received and/or sent to counsel regarding the underlying civil litigation and any other documents and/or communications regarding the underlying civil action."

[DE 25-2, pgs. 15, and 19].

The Court has determined, as noted prior in this order, that any evidence or facts pertaining to Henderson's agreement to consent to liability and assign his rights to Plaintiff, the decision to not execute or record the judgment against Henderson, the decision to dismiss Munson from the case, the decision to enter binding arbitration before a single arbitrator as to damages, the selection of the arbitrator, and the facts underlying the hybrid _Coblentz_ agreement/Arbitration Award are all relevant and proportional to the needs of this case. The

Court also finds, as noted previously in this order, that Fla. Stat. 682.051(4) does not apply to immunize or preclude production of documents, correspondence, affidavits, depositions, statements, or other papers or materials submitted by the parties or their counsel to the arbitrator or received by the parties or their counsel from the arbitrator. Further, in regards to these four subpoenas *duces tecum*, the scope of arbitral immunity which protects an arbitrator or arbitration organization does not extend to participants in the arbitration. The language of Fla. Stat § 682.051(4) states that only an "arbitrator or representative of an arbitration organization" may not be required to produce records of the arbitration. Additionally, the Court notes that California Rule of Evidence § 703.5, on which RUAA § 14(d) and Fla. Stat. § 682.051(4) were based, has been interpreted to mean that the statutory arbitral immunity applies solely to the arbitrator or representative of the arbitration organization, and not to parties involved in an arbitration. *See Caro v. Smith*, 59 Cal. App. 4th 725, 734, 69 Cal. Rptr. 2d 306, 312 (1997); *Skulnick v. Roberts Express, Inc.* 2 Cal. App. 4th 884, 890 (1992) (holding that §703.5 excluded the settlement judge from testifying about conversations made during settlement conferences, but allowed attorney declarations.) The Court agrees with this interpretation and finds that Fla. Stat. § 682.051(4) does not immunize the parties to the arbitration from discovery requests pertaining to the arbitration proceedings.

Thus, for all the reasons specified above, the documents sought from these four parties are deemed to be relevant and proportional to the needs of this case, and lay outside of the protection of Fla. Stat. § 682.051(4). However, the documents remain subject to any potential claims of work-product or attorney/client privilege, which Henderson, Munson, or their counsel may choose to assert once they are served with a subpoena *duces tecum* as authorized by the

court in this order. [10] If such work-product or attorney-client privilege claims are asserted by Henderson, Munson, or their respective counsel once they are served with a subpoena *duces tecum*, the Court will determine those privilege issues in due course.

## Conclusion

In summary, the Court rejects Plaintiff's argument that all of the discovery sought by Defendant pursuant to its five subpoenas is irrelevant and protected by arbitral immunity. Likewise, the Court rejects Defendant's position that it is entitled to all of the discovery it seeks pursuant to its five subpoenas. Rather, the Court chooses to apply the relevancy and proportionality concepts of Rule 26(b)(1) to this discovery dispute together with the appropriate scope of Florida's arbitral immunity statute in an effort to be fair and equitable to both parties. Accordingly, for the foregoing reasons, it is hereby **ORDERED** as follows:

1.      Plaintiff's Motion for Protective Order [DE 25] is **DENIED IN PART AND GRANTED IN PART**, as follows:

     a.  As to the records custodian of Michael Knecht, Esq., and the records custodian of Tomberg, Hanson, and Halper, LLC., Defendant is permitted to serve subpoenas seeking: I. All correspondence and or/attorney notes related to the settlement agreement, the liability or non-liability of Henderson and Munson, the agreement to submit to binding arbitration, the selection of the arbitrator, and all liability and damage issues; II. All documents received by the counsel, documents produced by counsel, and any discovery responses of any party; III. All medical records, medical reports, medical bills, assisted living facility information, mortality tables, business records of Plaintiff,

---

[10] Plaintiff does not have standing to assert an attorney-client or work product privilege on behalf of these four non-parties to this lawsuit. Any argument that the subpoenas seek attorney-client or work-product privileged documents from Henderson, Munson, and their respective counsel must be raised by those non-parties in a timely manner.

Anthony Kehle; IV. Any and all documents reviewed or received tending to support or negate the Defendant's negligence, including Mr. Henderson; V. All documents sent or submitted to the arbitrator relating to damages or negligence; VI. All documents relating to the liability of Mr. Henderson; and VII. All documents related to the decision to attend arbitration and the selection of the specific arbitrator.

b.  As to Courtney Munson and Gerald A. Henderson, Defendant is permitted to serve subpoenas seeking: I. Any communications with your counsel regarding assignment of rights to Plaintiff (Kehle); II. Settlement negotiations, all information and/or documentation provided to the arbitrator (including but not limited to correspondence, records, email communications, and any other information provided); and III. Correspondence received and/or sent to your counsel regarding the underlying civil litigation and any other documents and/or communications regarding the underlying civil action.

c.  As to the records custodian of Matrix Mediation, Defendant is permitted to serve a subpoena seeking documents, materials, or evidence submitted to the arbitrator by or on behalf the parties, or their counsel. This includes but is not limited to medical records, medical reports, assisted living facility information, mortality tables, business records, expert reports and invoices, correspondences, statements, depositions, affidavits, declarations, or any other papers or communications submitted by Plaintiff, Henderson, Munson, or their counsel to the arbitrator. However, Defendant is not permitted to request or obtain, and Matrix shall not be required to produce, any notes of the

arbitrator, research of the arbitrator or communications between the arbitrator and his staff or research assistants, the thought processes of the arbitrator, the decision making or deliberative process of the arbitrator, or the specific documents upon which the arbitrator may have relied in reaching a decision.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 28th day of December, 2017.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE