UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-80447-CV-MARRA/MATTHEWMAN

NELIDA KEHLE, as Guardian of
ANTHONY KEHLE, III,

    Plaintiff,

vs.

USAA CASUALTY INSURANCE
COMPANY,

    Defendant.
_____/



FILED by ____ D.C.

MAY 3 0 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION TO COMPEL BETTER DISCOVERY RESPONSES [DE 60]

**THIS CAUSE** is before the Court upon Defendant, USAA Casualty Insurance Company's ("Defendant") Motion to Compel Better Discovery Responses. [DE 60]. This matter was referred to the undersigned by United States District Judge Kenneth A. Marra upon an Order referring all discovery matters to the undersigned for appropriate disposition. *See* DE 13. Plaintiff, Nelida Kehle ("Plaintiff") filed a Response to the Motion [DE 63] and Defendant filed a Reply [DE 64]. The Court held a hearing on the Motion on March 12, 2018. The Court has also carefully conducted an *in camera* review of numerous emails at issue in this discovery dispute. The matter is now ripe for review.

### I.    INTRODUCTION

This discovery dispute involves Defendant USAA's demand that Plaintiff Kehle produce:

    a. Emails, withheld by Plaintiff as privileged work product, between Mr. Steve Rothman, Esq., who represented Plaintiff in the underlying state court

litigation, and Mr. Robert Major, Esq. and Mr. Fred Cunningham, Esq., who currently represent Plaintiff in the current federal litigation; and

b. Additional information requested in Interrogatories 17, 18, 19, and 22 of Defendant's First Set of Interrogatories relating to Mr. Henderson's consent to liability, the settlement agreement, and the arbitration proceedings.

The Court assumes the reader's familiarity with its prior lengthy Order at DE 49 which required production of certain documents requested by Defendant related to the hybrid-*Coblentz*/arbitration agreement at issue in this case.[1] After the entry of the Court's prior Order, certain documents were produced to Defendant, and Plaintiff served Amended Discovery Responses in light of this Court's Order. Upon receipt of those amended responses, Defendant filed the pending Motion to Compel [DE 60] which takes issue with the emails withheld by Plaintiff as work product, as well as Plaintiff's responses to Interrogatories 17, 18, 19, and 22. This dispute solely involves the work-product privilege. Plaintiff objects to the discovery sought by Defendant on work-product privilege grounds. Defendant asserts that Plaintiff has waived any work-product privilege due to issue injection and that Defendant has a substantial need for the documents and information to present its defense in this case.

## II. MOTION TO COMPEL, RESPONSE AND REPLY

On February 22, 2018, Defendant filed its Motion to Compel Better Discovery Responses. [DE 60]. In addition to the emails requested, the specific interrogatories at issue are:

**Interrogatory Number 17:** Paragraph 15 of the Complaint in the Underlying Action (attached as Exhibit D to your Amended Complaint) states that "Henderson was operating the Vessel with and at the direction of Munson." Paragraph 15 of the Second Amended Complaint in the Underlying Action (attached as Exhibit E to your Amended Complaint) states that "Henderson was operating the Vessel with and as a personal favor

---

[1] See Order on Plaintiff's Motion for Protective Order [DE 49]; *Kehle v. USAA Cas. Ins. Co.*, No. 17-80447-CV, 2017 WL 6729186 (S.D. Fla. Dec. 28, 2017)

2

to Munson." Please state with specificity the following:
> (a) The reason(s) and/or circumstance(s) which caused you to revise Paragraph 15;
> (b) Describe any discussions and/or communications relating to the revision of Paragraph 15; and
> (c) A list of any and all documents that support your revision to Paragraph 15.

**Interrogatory Number 18:** In the underlying action Mr. Henderson, Mr. Munson, and Nuncio were allegedly negligent causing injury to Mr. Kehle. Please state with specificity the following:
> (a) The reason(s), circumstance(s), and supporting evidence supporting the assertion that Mr. Henderson, Mr. Munson, and/or Nuncio was negligent;
> (b) The apportionment of fault you believed was attributable to Mr. Henderson, Mr. Munson, and/or Nuncio; and
> (c) The specific acts that you contended Mr. Henderson performed negligently.

**Interrogatory Number 19:** In Paragraph 23 of the Amended Complaint you allege that "the parties agreed to submit the issue of the amount of damages sustained by Mr. Kehle as a result of the negligence of Henderson to Binding Arbitration". Please state with specificity the following:
> (a) The reasons and/or circumstances the underlying action was submitted to Binding Arbitration, including who suggested Binding Arbitration and a list of documents related thereto;
> (b) Whether the issue of negligence was submitted to the Binding Arbitrator and if so please state the reason(s), circumstance(s), and evidence supporting the assertion that Mr. Henderson;
> (c) The reason(s) and/or circumstance(s) why the issue of negligence was not submitted to Binding Arbitration, including a list of any and all documents related thereto;
> (d) Did Mr. Henderson concede and/or admit negligence? Please state with specificity the following:
> > i. The reason(s) and/or circumstance(s) why Mr. Henderson conceded/admitted negligence, including a list of any and all documents related thereto; and
> > ii. Please describe and/or summarize any and all communications with Mr. Henderson relating to his concession/admission of negligence.

**Interrogatory Number 22:** Please state with specificity why Mr. Courtney Munson and Nuncio were dropped from the Underlying Action, a list of any documents relating to them being dropped, and why no other defendant was dropped from the Underlying Action.

### A. Defendant's Position as Stated in Its Motion and Reply

As set forth in its Motion [DE 60], Defendant claims that Plaintiff has waived all of her work-product objections to the production of the emails at issue and to the responses to the interrogatories through the doctrine of issue injection. Defendant argues that because Plaintiff seeks to recover the arbitration award through a *Coblentz*-style agreement,[2] she has voluntarily asserted that the settlement agreement and arbitration were reasonable and in good faith. [DE 60, pgs. 1-4]. Because Plaintiff has the burden to prove the elements of reasonableness and good faith in order to recover under a *Coblentz* agreement, Defendant asserts that it is Plaintiff who has injected the issues into the case. *Id.* Therefore, Plaintiff should not be permitted to produce evidence directly related to the issues of good faith but simultaneously prevent Defendant from related discovery to rebuff her claims. [DE 60, pgs. 5-6]. Defendant asserts that it is entitled to rebuff Plaintiff's claims of good faith through "broad discovery" and the email correspondence at issue, generally categorized as "arbitration," "settlement," "dismissal," and "strategy," is necessary to determine if the *Coblentz* agreement at issue was tainted by bad faith, fraud, or collusion. *Id.* at 6.

To support this contention, Defendant argues that Plaintiff has made the protected information, specifically, the emails between Plaintiff's prior and current counsel, highly relevant to the case because the emails show that counsel colluded in bad faith against Defendant USAA. [DE 60, pg. 5]. Defendant asserts that its preliminary discovery supports the proposition that the attorneys in this case, namely, Mr. Rothman, Mr. Major, Mr. Cunningham, and Mr. Michael Knecht, Esq., counsel for Henderson, the insured, "plotted together and jointly consulted bad faith attorneys." *Id.* Defendant claims that the attorneys decided to dismiss Mr.

---

[2] The Court notes that the agreement at issue is not a true *Coblentz* agreement, rather, it is a hybrid *Coblentz*/arbitration agreement as discussed in the Court's prior Order [DE 49, pg. 20].

4

Munson from the underlying lawsuit in bad faith, and failed to hire a court reporter at the underlying arbitration in order to conceal their bad faith. *Id.*

Finally, Defendant asserts that because establishing that bad faith, fraud, and collusion existed in the underlying settlement agreement is vital to its defense, Defendant should be entitled to broad discovery of the "approximately 90" emails between Mr. Rothman and Mr. Major and Mr. Cunningham.[3] Defendant claims that these emails "go to the very heart of reasonableness and good faith" [DE 60, pg. 6] and alleges that denial of discovery into issues that Plaintiff voluntarily injected into the case would be manifestly unfair. *Id.* Defendant asserts that Plaintiff is the primary source of evidence that her attorneys "colluded with the insured against USAA CIC" in consenting to liability, entering into a settlement agreement, and entering arbitration. *Id.* Defendant argues that denying it access to this highly relevant information would preclude Defendant from probing into the issues of bad faith, fraud, and collusion and would hinder its ability to defend itself against Plaintiff's claims. *Id.*

### B. Plaintiff's Position as Stated in Her Response

Plaintiff filed her Response on March 2, 2018. [DE 63]. Plaintiff argues that she has not injected the issues of bad faith, fraud, and collusion into the case simply by filing suit to enforce a *Coblentz* agreement. [DE 63, pg. 2]. Instead, she claims, it is Defendant who has injected these issues into the litigation because Defendant is asserting bad faith, fraud, and collusion as affirmative defenses. *Id.* Therefore, according to Plaintiff, Defendant bears the burden of proof and is the injecting party. *Id.* Plaintiff argues that there is no blanket waiver of privilege merely because she has filed suit to enforce a *Coblentz* agreement. *Id.* Plaintiff further argues that the emails constitute opinion work product, which "enjoys a nearly absolute immunity" and can only

---

[3] Although the parties discuss the emails as numbering "approximately 90," there were 127 tabbed email correspondences submitted to the Court for *in camera* review. *See* f.n. 4, infra.

5

be discovered in very rare and extraordinary circumstances. Therefore, she claims that none of the emails should be produced to Defendant.[DE 63, pg. 5].

C. **Defendant's Position as Stated in Its Reply**

Defendant then filed a Reply [DE 64], in which it reiterates its argument that Plaintiff has waived her work-product objections by injecting the issues of good faith and reasonableness into this case. [DE 64, pg. 3]. Defendant requests that the Court order the emails be produced and the interrogatories at issue be answered because both discovery requests "go to the very heart of whether bad faith, fraud, and collusion are present" in this case. [DE 64, pg. 5].

III. **IN CAMERA REVIEW**

In its Motion to Compel, Defendant sought an *in camera* review by the Court of the emails at issue to determine if Plaintiff has implicitly waived any privilege or if the emails are protected work product. At the March 12, 2018 hearing, the parties agreed to *in camera* review on an *ex parte* basis by the undersigned, and the Court therefore directed Plaintiff to submit the emails at issue. [DE 67]. Plaintiff submitted the emails on March 12, 2018.[4] The Court has carefully reviewed the emails which are at the center of this discovery dispute.

IV. **ANALYSIS**

A. **Work Product Doctrine**

Plaintiff argues that the withheld emails and interrogatory responses are protected by the work-product doctrine and that the doctrine of waiver by issue injection does not apply. The Court notes that the only privilege Plaintiff has asserted in the instant dispute is the work-product

---

[4] The emails submitted to the Court for *in camera* review are contained in two large binders. The first binder is tabbed 1-64, and the second binder is tabbed 65-127. All of the documents are Bates stamped and will be referenced in this Order by their respective Bates stamped numbers. Also, it should be noted that some of the emails are duplicates or near duplicates.

privilege. Therefore, this Order only addresses the issue of waiver of work-product privilege by issue injection.

As this is a federal diversity action, federal law governs work-product doctrine issues. *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.,* No. 13–23881–CIV, 2014 WL 5305581, at *2 (S.D.Fla. Oct. 15, 2014); *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.,* No. 12-81397-CIV, 2015 WL 9257019, at *3 (S.D.Fla. Dec. 18, 2015). Federal Rule of Civil Procedure 26(b)(3), which sets forth the work-product doctrine, states in relevant part:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> 1. They are otherwise discoverable under Rule 26(b)(1); and
> 2. The party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

Rule 26(b)(3) establishes two tiers of protection: first, work product prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; and second, "core" or "opinion" work product that encompasses the "mental impressions, conclusions, opinion, legal theories of an attorney or other representative of a party concerning the litigation" is "generally afforded near absolute protection from discovery." *Kahn v. United States,* No. 13-24366-CIV, 2015 WL 4112081, at *4 (S.D. Fla. July 8, 2015) (citing *In re Cendant Corp. Sec. Litig.,* 343 F.3d 658 (3d Cir.2003) (citing Fed.R.Civ.P. 26(b)(3) and *In re Ford Motor Co.,* 110 F.3d 954, 962 n. 7 (3d Cir.1997)).

7

(i) <u>FACT WORK PRODUCT</u>

Fact work product includes all documents, information, and tangible things prepared and gathered in anticipation of litigation or for trial. *Stern v. O'Quinn,* 253 F.R.D. 663, 685 (S.D.Fla. 2008). The party seeking such discovery must show a "substantial need" and "undue hardship" in obtaining the materials or their substantial equivalent by other means under Rule 26(b)(3)(A)(ii). *Callaway v. Papa John's USA, Inc.,* No. 09-61989-CIV, 2010 WL 4024883, at *7 (S.D. Fla. Oct. 12, 2010).

(ii) <u>OPINION WORK PRODUCT</u>

Opinion work product encompasses all material that reflects the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. Fed. R. Civ. P. 26(b)(3); *Williamson v. Moore,* 221 D. 3d 1177, 1182 (citing *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947)). Rule 26(b)(3) provides that, even if the party seeking discovery of information otherwise protected by the work-product doctrine has made the requisite showing of need and undue hardship, courts must still protect against the disclosure of opinion work product. *Kahn,* 2015 WL 4112081, at *4 (citing *In re Cendant Corp. Sec. Litig.,* 343 F.3d 658 (3d Cir.2003)). In the Eleventh Circuit, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances. *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1421 (11th Cir.1994); See *Lake Shore Radiator, Inc. v. Radiator Express Warehouse,* 2007 WL 842989, *4 (M.D.Fla.2007) ("Opinion work product is absolutely immune from discovery."); *Underwriters Ins. Co. v. Atlanta Gas Light Co.,* 248 F.R.D. 663, 2008 WL 489016, *6 (N.D. Ga. 2008) ("[T]he literal text of Rule 26(b)(3) and its interpretation by courts in this circuit suggest that the Rule provides an absolute bar to discovering the mental impressions of an

attorney or representative."). Federal work-product immunity extends to documents prepared in anticipation of underlying state court litigation. *Milinazzo,* 247 F.R.D. at 700.

### B. At-Issue Waiver

The subject-matter waiver doctrine provides that a party who injects into the case an issue that in fairness requires an examination of communications otherwise protected by the attorney-client privilege loses that privilege. *Cox v. Adm'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1422 (11th Cir.1994) (citing *GAB Bus. Servs., Inc. v. Syndicate 627,* 809 F.2d 755, 762 (11th Cir.1987)). "[T]he plain language of Fed.R.Civ.P. 26(b)(3) suggests that opinion work product should not be subject to such an implied waiver, and that the rationale behind the doctrine (the fear that a party might 'make affirmative testimonial use' of a communication and then seek to shield it from disclosure) does not apply to mental impressions and legal theories." *Cox,* 17 F.3d at 1422 (citing *In re Martin Marietta Corp.,* 856 F.2d 619, 626 (4th Cir.1988), *cert. denied,* 490 U.S. 1011 (1989) (quoting *Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1223 (4th Cir.1976)). The doctrine of "at-issue" waiver rests on the principle of fairness. *Maplewood Partners, L.P. v. Indian Harbor Ins. Co.,* 295 F.R.D. 550, 624 (S.D.Fla. 2013).

In *Cox,* the Eleventh Circuit stated that the "subject matter waiver doctrine does not extend to materials protected by the opinion work product privilege." *Cox,* 17 F.3d at 1422 (citing *In re Martin Marietta Corp.,* 856 F.2d 619, 625-26 (4th Cir. 1988)). *Cox* considered the "very rare and extraordinary circumstances" under which opinion work product can be discovered. The Eleventh Circuit found that the crime-fraud exception presented one of the very rare and exceptional circumstances in which opinion work product is discoverable, but declined to declare the subject matter waiver doctrine as a rare and exceptional circumstance. *Id.* However, several courts have held, subsequent to *Cox,* that a party can waive its opinion work-

9

product privilege pursuant to the doctrine of at-issue waiver if it concerns the mental impressions and opinions of counsel in the context of bad faith litigation. *See Tolz v. Geico Gen. Ins. Co.*, No. 08-80663-CIV, 2010 WL 384745 (S.D.Fla. Jan. 27, 2010) (upon proper showing, an insurer may be entitled to discover work-product materials contained in the file of counsel who represented the insured in the underlying action); *see Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, No. 08-23343-CIV, 2011 WL 3918597, at *2 (S.D. Fla. Sept. 6, 2011), adhered to on denial of reconsideration, 295 F.R.D. 550 (S.D. Fla. 2013) (finding that plaintiffs had waived work-product protection by putting their attorneys' assessments at issue); *Stern v. O'Quinn,* 253 F.R.D. 663, 676-77 (S.D. Fla 2008) (applying the at-issue doctrine as a waiver of opinion work product); *Batchelor v. Geico Cas.* Co., No. 6:11-CV-1071-ORL, 2014 WL 3697691, at *4 (M.D. Fla. Apr. 22, 2014), aff'd, No. 6:11-CV-1071-ORL-37, 2014 WL 3687490 (M.D. Fla. June 20, 2014) (allowing the production of opinion work product that directly related to the attempted settlement of plaintiff's insurance claim, which was the subject of the instant action).

In *Tolz v. Geico Gen. Ins. Co.*, No. 08-80663-CIV, 2010 WL 384745 (S.D.Fla. Jan. 27, 2010), the Honorable United States District Judge Kenneth A. Marra considered whether the at-issue doctrine applied to an attorney's thoughts and mental impressions in the context of bad faith litigation. In that case, a plaintiff sued defendant GEICO for acting in bad faith in the handling of the underlying state claim. *Id.* at *1. As an affirmative defense, GEICO asserted that a party in the underlying case ("Granados") unreasonably refused to accept GEICO's tender of the policy limits. *Id.* GEICO moved to compel the production of the litigation files maintained by the law firm ("Searcy") who represented Granados in the underlying lawsuit. *Id.* Specifically, GEICO sought "all documents and things related to the formulation and presentation of settlement demands and offers, and the determination of the value of Granados' claims." *Id.*

The Honorable United States Magistrate Judge Linnea Johnson granted GEICO's request, reasoning that:

> the thoughts and mental impressions of Granados and her attorneys with respect to the underlying proceeding are directly relevant to the instant action for bad faith, as such thoughts and mental impressions provide the best evidence of whether Granados unreasonably refused to accept the policy limits and, if she did, whether GEICO had a reasonable opportunity to settle the claim. The focus is on the substance of the information sought in the underlying action and whether that information sheds light on the determinative issues involved in the present litigation, not which parties' thoughts and mental impressions are involved.

*Tolz v. GEICO Gen. Ins. Co.*, No. 08-80663-CIV, 2010 WL 11509325, at *1 (S.D. Fla. Feb. 9, 2010).

Searcy objected to Magistrate Judge Johnson's ruling, but Judge Marra found that Judge Johnson's ruling regarding opinion work product "cannot be said to be clearly erroneous or contrary to law." Judge Marra upheld the magistrate judge's finding that "opinion work product is not inviolate and may be invaded when the information contained within the work-product materials is directly at issue," and further, that such information is often "directly at issue in cases against an insurer for alleged violations of the duty of good faith." *Tolz*, 2010 WL 384745 at *4. Because the claimant's unwillingness to settle the claim was relevant as to whether the insurer acted in bad faith, the court found that the insurer, upon the proper showing, may be entitled to discover work-product materials contained within the file of counsel who represented the insured in the underlying liability action. *Id.*; *See Batchelor*, No. 6:11-CV-1071-ORL, 2014 WL 3697691, at *4.

The *Maplewood Partners* court also found that a party can waive its opinion work-product privileges if the information sought concerns the mental impressions and opinions of the parties' attorneys in bad faith litigation through at-issue waiver. *Maplewood Partners, L.P.*, 2011 WL 3918597, at *7. In that case, the court allowed discovery into an attorney's opinion work

11

product pertaining to "estimates, evaluations, and/or assessments" of potential legal liability and/or settlement values in a suit solely for breach of contract of a directors and officers insurance policy to indemnify the cost of defense fees and judgment or settlement amounts, because it was relevant to the plaintiff's claim that the defendant failed to fairly allocate the covered loss.

Both *Tolz* and *Maplewood Partners* demonstrate that there are certain situations, often involving cases against an insurer for alleged violations of the duty of good faith, or, as in the instant case, alleged violations of the duty of good faith and reasonableness on the part of the plaintiff, or collusion, where the doctrine of at-issue waiver could constitute one of the "very rare and extraordinary circumstances" in which opinion work product may be discoverable. The Court notes that the doctrine of "at-issue" waiver rests on the principle of fairness. *Maplewood Partners,* 295 F.R.D. at 624. As noted in *Tolz,* "the work-product privilege is not inviolate and may be invaded when the information contained within the work-product materials is directly at issue." 2010 WL 384745 at *4.

The instant case involves alleged violations of the duty of good faith and reasonableness on the part of Plaintiff. It would be unfair to prevent Defendant from discovery into information which could potentially shed light on the alleged bad faith conduct of the parties, or lack of good faith and unreasonableness, when it is Plaintiff who is inserting the issues of reasonableness and good faith of the agreement into this case. *See Bradfield v. Mid-Continent Casualty Company,* 15 F. Supp. 3d 1253 (M.D. Fla. 2014) (holding that if plaintiffs must introduce evidence as to the reasonableness and lack of bad faith in order to prevail, they cannot then hide behind the shield of privilege to prevent defendant from effectively challenging such evidence). Therefore, if the emails in dispute indeed contain information which is directly relevant to the good faith basis or

reasonableness of the hybrid *Coblentz* agreement/arbitration award, the at-issue waiver doctrine may apply. *See Tolz*, 2010 WL 384745 at *4; *Maplewood Partners, L.P.*, 2011 WL 3918597, at *7. This is only fair.

### C. Plaintiff Kehle's At-Issue Waiver in the Instant Case

To establish that Plaintiff has indeed waived her opinion work-product objections to the emails which pertain to the good faith and reasonableness of the hybrid *Coblentz* agreement/arbitration award between Plaintiff and Mr. Henderson, Defendant must satisfy the three-part *Hearn* test. *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).[5] A party waives work-product protection when (1) assertion of the protections results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense. *Stern v. O'Quinn*, 253 F.R.D. 663, 676 (S.D.Fla. 2008) (citing *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 55 (S.D.N.Y.1999) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975)).

The Court finds that Defendant has met the first element of the *Hearn* test because it has shown that the assertion of the opinion work-product privilege was affirmatively raised by Plaintiff when she filed the lawsuit. *See Bradfield*, 15 F. Supp. 3d at 1257. Here, Plaintiff, who is the party invoking the work-product protection, will have to make a *prima facie* showing that the hybrid *Coblentz* agreement/arbitration award was reasonable and made in good faith in order to enforce the agreement. *Id.* Therefore, Plaintiff cannot "hide behind the shield of privilege" to prevent Defendant from effectively challenging the evidence she presents. *Id.*

---

[5] The *Hearn* test has been adopted by the Eleventh Circuit. *See Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994).

13

Defendant has met the second element of the *Hearn* test by demonstrating that Plaintiff has put the protected information at issue by making it relevant to this case. [DE 60, pg. 5]. Plaintiff has made the emails between Plaintiff's former counsel and her current counsel relevant to this case because she must show that the hybrid *Coblentz* agreement/arbitration award was not tainted with "bad faith, fraud, or collusion." *Id.* After reviewing the disputed emails *in camera*, on an *ex parte* basis, the Court finds that certain of the emails constitute fact work product, while others constitute opinion work product, and others contain both fact and opinion work product. As to those relevant emails which constitute fact work product, the Court finds that Defendant has established substantial need and an inability to obtain the materials or their substantial equivalent by other means. As to the relevant emails which constitute opinion work product, the Court finds that certain of the thoughts and mental impressions of the attorneys in this case with respect to the settlement agreement and the arbitration award are directly relevant to the good faith and reasonableness of the agreement and award. They are also relevant to allegations of collusion. Certain of the emails would provide the best evidence of whether Mr. Henderson, the insured, "lied down" during the underlying negotiations, and if he did, whether he and Plaintiff Kehle made the hybrid *Coblentz* agreement/arbitration award in bad faith. They are also relevant to whether the reasons Plaintiff chose to dismiss Munson and Nuncio were tainted by fraud, collusion, or bad faith. Defendant has a need for these documents and cannot obtain them elsewhere.

Finally, the Court finds that allowing Plaintiff to maintain her work-product privilege would deny USAA access to information vital to its defense because it would preclude USAA from probing into the primary source of evidence of alleged bad faith, fraud, and collusion. Plaintiff has brought a breach of contract action and seeks to enforce the hybrid *Coblentz*

14

agreement/arbitration award against Defendant USAA in the amount of $8,818,804. As stated above, the spirit of the at-issue waiver doctrine is to encourage fairness. Enforcing the hybrid *Coblentz* agreement/arbitration award requires Plaintiff to establish, by a prima facie showing, that the hybrid *Coblentz* agreement/arbitration award was reasonable and made in good faith, but the ultimate burden of proof will rest with USAA. *See Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1279 (S.D. Fla. 2008) (citing *Chomat v. Northern Ins. Co. of New York*, 919 So.2d 535, 538 (Fla. 3d DCA. 2006)). It would be manifestly unfair to prohibit Defendant from discovery into the communications between Plaintiff's former and current attorneys regarding the settlement agreement, the arbitration proceedings, and the arbitration award which are directly relevant to the reasonableness and good faith of the hybrid *Coblentz* agreement/arbitration award, and to issues of alleged collusion.

As stated in the Court's prior Order [DE 49, pg. 20], the Court will not "hamstring Defendant USAA from pursuing discovery into whether the settlement between Plaintiff and Henderson was reasonable, in good faith, or a sham." To not allow Defendant discovery into specific areas of the underlying lawsuit would deprive Defendant of its only source of information needed to determine if the settlement agreement and arbitration award were in fact reasonable, free from collusion, and made in good faith, and it would indeed deny USAA access to information vital to its defense. Thus, Defendant has met the third element of the *Hearn* test.

Therefore, the Court finds that, by seeking to enforce the hybrid *Coblentz* agreement/arbitration award, Plaintiff has put "at-issue" the parameters of the hybrid *Coblentz* agreement/arbitration award, including Plaintiff's agreement to dismiss Munson and Nuncio from the lawsuit and permit them to avoid any liability while seeking to impose all liability upon Defendant USAA. Plaintiff has waived her opinion work-product immunity solely over the work

15

product which contains information directly relevant to the good faith and reasonableness of the hybrid *Coblentz* agreement/arbitration award, and allegations of collusion. This includes information pertaining to the dismissal of Munson, the facts and circumstances underlying Henderson and Munson's alleged liability, the agreement to proceed to arbitration before a single arbitrator, and the selection of the arbitrator.

## V. **CONCLUSION**

In light of the foregoing, it is **ORDERED** that Defendant's Motion to Compel Better Discovery Responses [DE 60] is **GRANTED IN PART AND DENIED IN PART,** as follows:

1. The Court has conducted a careful *in camera* review of the disputed email communications between Steven Rothman, Esq., of Jones, Foster, Johnson, and Stubbs, P.A, who represented Plaintiff in the underlying state court lawsuit, and Fred Cunningham, Esq., of Dominick Cunningham & Whalen, and Robert Major, of Ver Ploeg & Lumpkin, P.A. who currently represent Plaintiff in this federal lawsuit. As a threshold matter, the Court finds that certain of these emails simply contain routine and mundane messages or communications relating to meeting times and scheduling issues and are largely irrelevant to this discovery dispute. The Court has carefully culled through all the emails in an effort to determine which emails, in fairness, should be produced. Certain emails are directly relevant to whether the hybrid *Coblentz* agreement/arbitration award was reasonable and made in good faith, or the product of alleged improper collusion and they are being ordered produced. Some of these emails constitute fact work product, some constitute opinion work product, and some contain both opinion and fact work product. In all cases, the Court has applied the applicable law cited in this Order to its decision as to whether or not to order

production. Upon review and analysis, the Court will require the production of only those emails specified below by Bates number. The Court reiterates that it is only ordering produced those emails which are directly relevant to the issues of bad faith, reasonableness, or alleged collusion. Therefore, many of the emails are not being ordered produced; rather, only those directly relevant emails are being produced. Defendant's Motion to Compel Better Responses as to Defendant's Request for Production 2 is **GRANTED** in part as follows. Plaintiff is **ORDERED** to produce to Defendant, within 10 days of the date of this Order, the following emails, as designated by their respective Bates numbers:

>  Kehle_006908-6909
>  Kehle_006922
>  Kehle_007012-7013
>  Kehle_007022-7023
>  Kehle_007040-7043
>  Kehle_007044-7047
>  Kehle_007052-7054
>  Kehle_007905
>  Kehle_007908-7909
>  Kehle_007910-7911
>  Kehle_007912
>  Kehle_008068-8070
>  Kehle_008101
>  Kehle_008129-8139
>  Kehle_008188-8196
>  Kehle_008323-8326
>  Kehle_008338-8340
>  Kehle_008351
>  Kehle_008639-8640
>  Kehle_008814-8820
>  Kehle_008821-8822
>  Kehle_008824-8825
>  Kehle_008939
>  Kehle_008961-8962
>  Kehle_009014-9015
>  Kehle_010462
>  Kehle_010582-010583

2. Defendant's Motion to Compel Better Responses to Interrogatories 18, 19, and 22 is **GRANTED.** Plaintiff shall, within 10 days of the date of this Order, provide better answers to those interrogatories as they are directly relevant to the good faith and reasonableness of the hybrid *Coblentz* agreement/arbitration award, including the dismissal of Munson, alleged collusion, the facts and circumstances underlying Henderson and Munson's alleged liability, the agreement to proceed to arbitration before a single arbitrator, and the selection of the arbitrator.

3. Defendant's Motion to Compel Better Responses to Interrogatory 17 is **DENIED** without prejudice at this time. The Court has concerns regarding the overbroad wording of Interrogatory 17, and therefore will not order Plaintiff to respond to this Interrogatory. Interrogatory 17 requests that Plaintiff explain the reasons Plaintiff amended paragraph 15 of the complaint in the underlying action. The request for the "reasons and/or circumstances" for the amendment of paragraph 15 and "any discussions and/or communications relating to the revision of paragraph 15" is overbroad, vague in certain respects, and unduly invasive. Therefore, Plaintiff shall not be required to respond to Interrogatory 17.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 30th day of May, 2018.

/s/ William Matthewman
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE